UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>    v.<br><br>ENLIGHTENED, INC.,<br><br>    Respondent. | Misc. No.   Case: 1:24–mc–00120<br>Assigned To: Moss, Randolph D.<br>Assign. Date : 9/23/2024<br>Description: Misc. (O–Deck) |

**MEMORANDUM IN SUPPORT OF UNITED STATES' PETITION FOR
SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMAND**

This is a summary proceeding filed by petitioner, the United States of America to obtain judicial enforcement of a Civil Investigative Demand issued by the U.S. Attorney's Office for the District of Columbia to respondent, Enlightened, Inc. ("Enlightened"), pursuant to the False Claims Act, 31 U.S.C. § 3733. Specifically, the United States Attorney's Office and the United States Office of Personnel Management (OPM), Office of the Inspector General (OIG) are investigating whether Enlightened violated the False Claims Act when it failed to disclose material and detrimental organizational conflicts of interest, as required by its contract, the Federal Acquisition Regulation ("FAR"), and OPM standards.

**Factual Background**

A. <u>OPM Contract OPM32-11-A-005</u>

    1.    In 2011, OPM issued a request for bids from private companies to develop the case management software that supports background investigations for federal employees and contractors.

2. Despite the fact that Enlightened did not do the work described in the solicitation for bids, OPM Contracting Official Sheron Spann proposed to the OPM Contracting Officer Representative on August 17, 2011, that OPM invite Enlightened to bid on the solicitation. *See* Statement of Offense in Support of Guilty Plea in *United States v. Spann,* 23cr111 (RCL) at ECF No. 6. (attached as Exh. 5) at ¶ 8.

3. Enlightened submitted the lowest bid and, on September 23, 2011, was awarded a Blanket Purchase Agreement OPM32-11-A-0005 (the "OPM Contract"). Attached as Exh. 2; *see also* Exh. 5 at ¶ 9.

4. Since that initial award, Enlightened continued to outbid other contractors and obtain further contracts through OPM and Sheron Spann. *See e.g.,* OPM Contr. Second Order (attached as Exh. 3); OPM Contr. Third Order (attached as Exh. 4); *see also* Exh. 5 at ¶ 10-12.

5. Sheron Spann had herself appointed as the OPM Point of Contact and primary Contracting Specialist for the awards to Enlightened. Exh. 5 at ¶ 9.

6. Included in the OPM Contract is a provision that addresses conflicts of interest:

> (a) The Contractor warrants that, to the best of the Contractor's knowledge and belief, there are no relevant facts or circumstances which could give rise to an organizational conflict of interest (OCI), as defined in FAR 9.5, Organizational and Consultants Conflicts of Interest, or that the Contractor has disclosed all such relevant information.
>
> (b) The Contractor agrees that if an actual or potential OCI is discovered after award, the Contractor shall make a full disclosure in writing to the Contracting Officer. This disclosure must include a description of actions, which the Contractor has taken or proposes to take, after consultation with the Contracting Officer, to avoid, mitigate, or neutralize the actual or potential conflict.
>
> (c) The Contracting Officer may terminate this contract for convenience, in whole or in part, if it deems such termination necessary to avoid an OCI. If the Contractor was aware of a potential OCI prior to award or discovered an actual or potential

    conflict after award and did not disclose or misrepresented relevant information to the Contacting Office, the Government may terminate the contract for default, debar the Contractor from Government contracting, or pursue such other remedies as may be permitted by law or this contract.

  (d) The Contractor must include this clause in all subcontracts and in lower tier subcontracts unless a waiver is requested from, and granted by, the Contracting Officer.

Exh. 1 at Attachment 1.

7. In addition to the contract language, 48 C.F.R. § 1352.209-74 applies to the OPM Contract and imposes a duty on all contractors to disclose any organizational conflicts of interest of either itself or of a subcontractor to the government.

8. Enlightened's OPM Contract originally had a funding ceiling of $4.5M, but under Sheron Spann's supervision, the contract costs ended up surpassing the original ceiling to an amount over $25 million. Exh. 5 at ¶ 10.

9. Additionally, the OPM contract was initially scheduled to end September 25, 2016, however, based on Sheron's influence as the eventual OPM Division Director and Contracting Officer, OPM awarded Enlightened a 3-month bridge contract for the OPM Contract at a value of $1.5M, and a 2-year contract extension of the OPM Contract valued at $6,343,100.80, without competition, that eventually netted $7,358,740. Exh. 5 at ¶ 11-12.

10. While Sheron Spann was overseeing OPM's contracts with Enlightened, she was also deriving a personal financial benefit from Enlightened through a subcontractor called Tier 1, LLC. *See* Exh. 5 at ¶ 13.

B. Conflicts of Interest

11. Thomas Spann is the spouse of Sheron Spann. Exh. 5 at ¶ 1.

12. Thomas Spann was a founding owner and Vice President of Enlightened until 2005. Exh. 5 at ¶ 16. Sheron Spann signed documents as a witness for Enlightened's Articles of Incorporation. *Id.* at ¶ 3.

13. On or around 2005, Thomas Spann and Sheron Spann created a company called Tier I, LLC ("Tier 1"). Thomas Spann and Sheron Spann were joint owners of Tier 1 and Sheron Spann was listed as Vice President. *Id.* at ¶ 17.

14. From 2005 to 2013, Thomas Spann worked through Tier 1 as an independent consultant for Enlightened. *Id.* Exh. 5 at ¶ 16.

15. Financial records for Tier 1 demonstrate a flow of funds from Enlightened to Tier 1 of approximately $736,000 from March 2012 through April 2017, including an American Express account and a motor vehicle. *Id.* at ¶ 20.

16. Both Sheron and Thomas Spann derived benefits from the payments to Tier 1, LLC. *Id.* at ¶ 21.[1]

17. On May 19, 2023, Sheron Spann pled guilty in District Court to one felony count of taking actions affecting a personal financial interest. *United States v. Spann,* 23cr111 (RCL). She admitted at her plea hearing that as early as 2011 she began steering OPM information technology contracts to companies under her family's control without disclosing the nature or extent of her relationship to the companies. *See generally* Exh. 5. Sheron Spann was sentenced

---

[1] In March 2013, Sheron Spann discussed Tier 1, LLC with an OPM Ethics Official and explained that she understood the criminal penalties associated with conflicts of interest and stated that the business she held jointly with her husband did not have contracts with OPM and never would while she was employed with OPM. In April 2017, Sheron Spann discussed Tier 1, LLC with OPM's Director of Procurement Operations and stated that her husband's IT business was not a concern for conflicts of interest with OPM. *See id.* at ECF No. 6.

to two years probation and a fine of $10,000. *United States v. Spann,* 23cr111 (RCL) at ECF No. 18.

C. <u>Civil Investigative Demand No. USAO-DC-0046</u>

18. Considering the criminal investigation and other matters, the United States Attorney's Office and OPM OIG initiated a civil FCA investigation against Enlightened and its senior management to determine if the senior management of Enlightened, including Antwanye Ford and Andre Rogers, knowingly used its relationship between Thomas Spann III and his wife to obtain an unfair competitive advantage when bidding on the OPM Contract and obtaining subsequent contract extensions.

19. In furtherance of the False Claims Act investigation, the United States Attorney's Office issued a Civil Investigative Demand to obtain documentary materials and written interrogatories relating to the contract between Enlightened and OPM. Exh. 5. This Civil Investigative Demand includes but is not limited to information related to Enlightened's personnel, contracting procedures, compliance procedures, relationships with OPM personnel and subcontractors, and relevant financial data. *Id.*

20. On March 14, 2024, Special Agent Sims served the Civil Investigative Demand upon Enlightened Inc.'s receptionist, Kristen Howard, at Enlightened's offices, located at 1205 Marion Barry SE, Suite 300 Washington, D.C. 20020-6935. Declaration from Special Agent Steffie Sims ("Sims Decl.") at ¶ 5.

21. On April 15, 2024, Special Agent Sims contacted Enlightened by telephone to verify whether the Civil Investigative Demand was delivered to Enlightened's CEO Antwayne Ford. *Id.* at ¶ 6. Kristen Howard answered Special Agent Sims' call and stated that she could not remember whether she gave the Civil Investigative Demand to Mr. Ford. *Id.* Ms. Howard placed

the call on hold to confirm with Mr. Ford for 12 minutes until the call was terminated with no further communication. *Id.*

22.     Special Agent Sims called Enlightened again, but it went immediately to voicemail. *Id.* at ¶ 7.  Special Agent Sims made two more attempts to contact Enlightened by telephone the following two days, however, the calls were answered by an automated announcement stating that Enlightened was no longer accepting voicemails.  *Id.* at ¶ 8.

23.     On April 17, 2024, Assistant United States Attorney Darrell Valdez also attempted to contact Enlightened by telephone but received the same automated announcement that Special Agent Sims did.  *Id.* at ¶ 9.

24.     Three months have passed since the Civil Investigative Demand was served upon Enlightened.  Indeed, it appears Enlightened Inc. stopped answering its telephone and stopped its voicemail service in an attempt to evade compliance.

<u>The United States is Entitled to Enforcement of the Civil Investigative Demand</u>

25.     Section 3733 of the False Claims Act provides the federal government with authority to issue a Civil Investigative Demand.  The Civil Investigative Demand enhances the federal government's investigatory powers to enable it to obtain documents or testimony relevant to a False Claims Act investigation.  31 U.S.C. § 3733(a); S.Rep. No. 99–345, at 33, 1986 U.S. Code Cong. & Admin. News 5266.

26.     A Civil Investigative Demand is a form of administrative subpoena and subject to the same standard of review.  *United States v. Witmer*, 835 F. Supp. 208, 220-21 (M.D. Pa. 1993).  *See also Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 107 (D.C. Cir. 2013) (Civil Investigative Demand by CFPB was enforceable as an administrative subpoena).  Administrative agencies in general and their respective Offices Inspector General in

particular have broad investigatory and subpoena power.  *See, e.g.*, *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994) ("Administrative agencies wield broad power to gather information through the issuance of subpoenas."); *id.* ("Like a grand jury, an agency 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'") (citation omitted); *Neighborhood Assistance Corp. of Am. v. United States HUD*, 19 F. Supp. 3d 1, 18 (D.C. Cir. 2013) ("Congress conferred very broad audit, investigatory, and subpoena powers on each Inspector General, as an independent and objective unit of the department or agency, to help promote efficiency and prevent fraud, waste, abuse, and mismanagement in federal government programs....") (citation omitted); 5 U.S.C. App. 3, §4(a)(1)-(5) (authorizing Offices of Inspector General to conduct investigations, provide reports, and make recommendations regarding, among other things, fraud and abuse in their agencies' programs and operations); *id.* § 6(a)(4) (authorizing Offices of Inspectors General to subpoena documents and other information, and to enforce their subpoenas in United States District Courts).

27. A Civil Investigative Demand is enforceable if the information sought is reasonably relevant to the Government's investigation.  *See, e.g.*, *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) ("It is well established that a district court must enforce a federal agency's investigative subpoena if the information sought is 'reasonably relevant.'") (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *Resolution Trust Corp*, 41 F.3d at 1544 ("We consider only whether 'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'") (citing *Morton Salt Co.*, 338 U.S. at 652).

28. Here, the OIG obtained information that raised questions as to whether Enlightened violated the False Claims Act through their contract with OPM. Included among these questions was whether Enlightened made false and fraudulent misrepresentations to obtain government contracts by failing to disclose a material conflict of interest. The OIG and the United States Attorney's Office therefore began an investigation and issued a Civil Investigative Demand seeking information from Enlightened related to their contract with OPM.

29. The Civil Investigative Demand sought information that would allow OIG to investigate Enlightened's personnel, contracting procedures, relationships with OPM and subcontractors, and relevant financial data.

30. The information requested by the Civil Investigative Demand is essential to OIG's investigation and should be in Enlightened's possession.

31. Since Special Agent Sims served Enlightened with the Civil Investigative Demand on March 14, 2024, Enlightened has not responded to any communication from both the OIG and the US Attorney's Office.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court enter an order granting the United States' Petition for Summary Enforcement of U.S. Attorney's Office for the District of Columbia Civil Investigative Demand and

A. Requiring Enlightened to produce to the OIG within ten calendar days of the entry of the Court's Order all items described in the Civil Investigative Demand.

B. Granting such other and further relief to the United States that this Court deems necessary and appropriate.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


_____
DARRELL C. VALDEZ, D.C. Bar # 420232
Assistant United States Attorney
Patrick Henry Building
601 D Street, N.W., Civil Division
Washington, D.C.  20530
(202) 252-2507
Darrell.Valdez@usdoj.gov

*Counsel for the United States of America*